(169 App. Div. 502)

## In re EVANS.

(Supreme Court, Appellate Division, First Department. November 5, 1915.)

ATTORNEY AND CLIENT ⊂⊃44—DISBARMENT—MISAPPROPRIATION OF CLIENT'S ADVANCED MONEY.

An attorney, retained to recover damages for personal injury on a basis of 33 per cent. of any amount recovered by a verdict or received in settlement, who received a draft to his order for the sum of $500, and who indorsed it, and deposited it to the credit of his wife, and withdrew $400 from the account, and deposited it to his own credit on a speculative account, where it was lost, notwithstanding his tender of the amount due to another attorney retained by the client, was guilty of professional misconduct, and will be suspended from practice for two years.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 55, 56, 62; Dec. Dig. ⊂⊃44.]

In the matter of Amos H. Evans. Application for disbarment on the report of official referee upon charges against respondent, an attorney and counselor at law, for professional misconduct. Respondent suspended for two years.

See, also, 165 App. Div. 983, 150 N. Y. Supp. 1085.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Einar Chrystie, of New York City (Henry A. Stickney, of New York City, of counsel), for petitioner.

Amos H. Evans, of New York City, pro se.

PER CURIAM. The respondent is charged by the Association of the Bar of the City of New York with professional misconduct with respect to the disposition of money collected for a client.

John Martin, an infant under the age of 14 years, son of Murdock Martin, a witness in the proceeding, received personal injuries on July 16, 1912. The automobile which caused the injuries was owned by one Morrison. Murdock Martin, the father of the injured boy, retained respondent to obtain damages, agreeing that respondent should receive 33 per cent. of any sum recovered by verdict or received in settlement. Murdock Martin was appointed guardian ad litem, and an action was begun. When it was about to be reached for trial in March, 1913, the Casualty Company, which had insured the owner of the automobile, offered to pay the sum of $500 in settlement of the claim. On March 11, 1913, the guardian ad litem signed a petition for leave to compromise and settle, and on March 13, 1913, an order was made authorizing a compromise of the claim for $500.

The order provided that the sum of $166 be allowed and paid to respondent as attorney for the guardian, and that the remainder of the sum be paid to a general guardian to be appointed by the Surrogate's Court, upon such guardian giving a proper bond, or that, if such general guardian be not appointed within 30 days, the said balance of the money to be paid into court by depositing it with the city chamberlain.

On March 13, 1913, an order was made by the surrogate of Queens county, appointing Murdock Martin temporary guardian of the infant; it appearing by a certificate of the county clerk that the bond required had been filed. On March 14, 1913, respondent received a draft, drawn by the solicitor of the Casualty Company to respondent's order, as attorney for the guardian, for the sum of $500. This draft respondent indorsed and caused it to be deposited to the credit of his wife in an account kept by her in the Equitable Trust Company. On the following day, or within a day or two, $400 was withdrawn from the account in the Equitable Trust Company, and deposited by respondent with the Stock Exchange firm of Warner & Co., to the credit of a speculative account which respondent kept with that firm. It clearly appears from the state of the account in the Equitable Trust Company, and the fact is not disputed, that this $400 deposited with Warner & Co. constituted a part of the money received by respondent in settlement of the Martin claim. It is a matter of dispute whether or not respondent was successful in his speculations. It is certain that the credit side of the account dwindled, either by losses or withdrawals, until it was finally closed out in June, 1913. The account of respondent's wife in the Equitable Trust Company also showed only inconsiderable balances between July 5, 1913, and September 3, 1913.

On April 3, 1913, respondent wrote Martin, asking him to call. The occasion for writing this letter, and what took place at the consequent interview, are matters of dispute between Martin and the respondent. The official referee, who enjoyed the advantage of seeing and hearing the witnesses, has accepted the version given by Martin, which is that the letter was sent in consequence of a call made by Martin at respondent's office, and that at the interview respondent declared that he had not yet collected the money. We are disposed to accept the referee's conclusions on this disputed question of fact. At all events, the respondent offers no explanation why, when he had collected the money on March 15th, he delayed writing to his client until April 3d.

What does clearly appear is that after this interview in April, and until the end of July, the respondent made no effort to communicate with his client, and Martin, though he made several efforts, failed to see respondent. Early in August, 1913, Martin retained another attorney to attempt to collect the money, and on August 25th respondent called at said attorney's office. This attorney unreasonably insisted upon collecting the whole $500, and made complaints against respondent, both to the district attorney and to the Association of the Bar. On August 27th respondent tendered the sum of $334, which was re-

fused, and on September 8th respondent paid to the city chamberlain $342, being the sum of $334, with interest.

The official referee finds, and we entirely agree with him, that the respondent was clearly guilty of professional misconduct; the gravamen of his offense being that he used his client's money as his own, and placed it at the risk of a speculative stock dealing account. This course of procedure on the part of attorneys has been so often condemned by this and other courts that no attorney can plead with good grace that he was ignorant that his action was improper, least of all an attorney of some 20 years' practice. It matters not that respondent and his client were, for some time, unable to agree as to the amount to be paid, or that respondent, as he claims, could at any time have made good the amount, even if it had been lost in speculation. The offense of which respondent was guilty, and it is a serious one, was in dealing with his client's money as if it were his own, and in subjecting it to any risk of loss whatever.

We approve the finding of the official referee that the charge of gross professional misconduct against the respondent has been established. It may be that respondent never intended permanently to misappropriate his client's money, and for that reason we do not apply the extreme penalty of disbarment.

The respondent is, however, suspended from practice for two years, with leave to apply at the expiration of that period for reinstatement, upon showing compliance with the conditions to be recited in the order to be entered hereon. Settle order on notice.